IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-03028-REB-KLM

JOSHUA M. BROWN,

     Plaintiff,

v.

BERTHOUD FIRE PROTECTION DISTRICT, a governmental entity of the state of
Colorado; and
STEPHEN CHARLES, individually;

     Defendants.

_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

### ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX

This matter is before the Court on Plaintiff's **Contested Motion to Amend**

**Complaint** [Docket No. 17; Filed March 1, 2013] (the "Motion").  On March 25, 2013,

Defendants Berthoud Fire Protection District ("BFPD") and Stephen Charles ("Charles")

filed a Response [#20].  On April 8, 2013, Plaintiff filed a Reply [#21].  Pursuant to 28

U.S.C. § 636(b)(1)(A) and D.C. COLO.LCivR 72.1C.3., the Motion has been referred to this

Court for a recommendation [#18].[1]  The Court has reviewed the Motion to Amend [#17],

Defendants' Response to the Motion to Amend [#20], Plaintiff's Reply in support of the

---

[1] A magistrate judge may issue orders on nondispositive motions only.  *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1461, 1462-63 (10th Cir. 1988).  Whether motions to amend are dispositive is an unsettled issue. *Chavez v. Hatterman*, No. 06-02525-WYD-MEH, 2009 WL 82496, at *1 (D. Colo. Jan 13, 2009) (citing cases).  When an order denying a motion to amend removes a defense or claim from the case, it may be dispositive. *Cuenca v. Univ. of Kan.*, 205 F. Supp. 2d 1226, 1228 (D. Kan. 2002).  For the purposes of resolving the present Motion to Amend, the Court will assume that the issues involved are dispositive and require a recommendation.

Motion to Amend [#21], the entire docket, and the applicable law, and is sufficiently advised in the premises. For the reasons set forth below, the Court respectfully **RECOMMENDS** that the Motion [#17] be **GRANTED in part and DENIED in part**.

## I. BACKGROUND

Plaintiff initiated this action on October 26, 2012 by filing a Complaint in state court. *State Ct. Verified Compl.* [#1-1] at 1. The case was subsequently removed to this Court on November 16, 2012. *Notice of Removal* [#1]. The claims alleged in the original Complaint were: (1) violation of 42 U.S.C. § 12101 ("ADA") (against Defendant BFPD), and (2) willful and wanton interference with an employment contract (against Defendant Charles). *Compl.* [#4] at 6-7. Defendants filed their Answer [#10] on January 7, 2013.

In his Amended Complaint [#17-1], Plaintiff alleges that he started working for Defendant BFPD in 1994 and was promoted to career staff in 1996. *Am. Compl.* [#17-1] ¶ 13. Plaintiff spent approximately ten months on light duty from November 1999 to August 2000, conducting research and developing a plan to improve Defendant BFPD's Insurance Service Office ("ISO") rating "in order to bring down the cost of fire insurance for homeowners in BFPD's area of service." *Id.* ¶ 15. After approximately six months on full duty as a line firefighter, in March 2001 Plaintiff was assigned to an office job and charged with implementing the Comprehensive Service Plan he had developed to improve Defendant BFPD's ISO rating. *Id.* ¶ 17. In September 2002, after the ISO audit had been completed, "Plaintiff returned to the line as a Battalion Chief." *Id.* ¶ 20.[2] However, soon after returning to the line, Plaintiff suffered an off-the-job injury and "was placed on light

---

[2] The Court understands Plaintiff's reference to duty "on the line" to mean that he was fighting fires. *Am. Compl.* [#17-1] ¶ 20.

duty and charged with maintenance of ISO, fire prevention and code enforcement." *Id.* ¶ 21.  He was not transferred back to the line until 2006.  *Id.* ¶ 26.

At an unspecified time between 2006 and 2009, Defendant Charles, Fire Chief and Plaintiff's supervisor, "assigned Andrew Kuiken, his son-in-law, to coordinate and conduct intensive training so that BFPD could meet more stringent ISO standards."  *Id.* ¶ 31. Plaintiff became "increasingly verbal during officers' meetings in opposing [Defendant Charles] about the training program because of the growing frequency and seriousness of injuries suffered by firefighters in training, declining morale among the District's firefighters and what he considered to be bad departmental policies."  *Id.* ¶ 33.  As a result, his relationship with Defendant Charles began to decline.  *Id.* ¶ 34.

Plaintiff alleges that he was injured in training on December 19, 2009.  *Id.* ¶ 37. However, he claims he waited ten days before making a workers' compensation claim because Defendant "BFPD [told] firefighters . . . that it discouraged them [from] making workers' compensation ("WC") claims because such claims were 'out of control' and costing [Defendant] BFPD a great deal of money."  *Id.* ¶ 36.  Plaintiff claims he re-injured his back on or about June 22, 2010, and then made his first request to Defendant Charles for light or modified duty.  *Id.* ¶ 39.  Plaintiff alleges that he "requested accommodation in the form of light or modified duty verbally, by email and by regular mail through counsel seven times in June and July 2010."  *Id.* ¶ 44.  These requests were denied, allegedly making Plaintiff "the only qualified firefighter denied light duty within the ten years prior to 2010."  *Id.* ¶ 47. "On or about July 15, 2010, Plaintiff received a letter from the Chief informing him that BFPD had placed him on involuntary FMLA leave and he would be required to exhaust his accumulated vacation and sick leave during the leave."  *Id.* ¶ 49.  Plaintiff exhausted his

vacation and sick leave in early August 2010, and "applied for disability benefits through the policy provided as a benefit of employment by BFPD." *Id.* ¶ 53-54.  Plaintiff then received notice of his termination by letter dated October 5, 2010, and his termination was "ratified" on October 27, 2010.  *Id.* ¶ 56-57.

Pursuant to the Motion, Plaintiff seeks to amend his Complaint to add the following additional claims for relief: (1) violation of 29 U.S.C. § 794 ("Rehabilitation Act") against Defendant BFPD, and (2) violation of 42 U.S.C. § 1983 against both Defendants.  *Motion* [#17] at 5-6; *compare Compl.* [#4] at 6-7, *with Am. Compl.* [#17-1] at 12.[3]  Plaintiff's Motion asserts that violations of the Rehabilitation Act are determined by the same standards as the ADA, so "notice of the ADA[ ] claim effectively notified BFPD of the possibility that [Plaintiff] could bring claims under the Act, satisfying the relation back requirement" and making addition of that claim appropriate.  *Motion* [#17] at 6; 29 U.S.C. § 794(d); *see Wilkerson v. Shinseki*, 606 F.3d 1256, 1262 (10th Cir. 2010).  Plaintiff also seeks "to add claims against Defendants pursuant to 42 U.S.C. § 1983 for violation of his right to equal protection under the law."  *Motion* [#17] at 6.

Defendants respond by arguing that "even under the liberal standards allowing for amendment of pleadings, Plaintiff's Motion, as to the proposed Section 1983 claims [sic], should be denied as futile."  *Response* [#20] at 2.  Defendants argue that Congress has "specifically foreclosed a remedy under Section 1983 . . . by providing a comprehensive

---

[3]  The Court notes that the proposed Amended Complaint, which seeks only monetary relief from Defendant Charles, does not specify in what capacity the claims against Defendant Charles are brought.  *Am. Compl.* [#17-1] at 14.  However, Plaintiff clarifies in his Motion that he intends to bring his Section 1983 claim against Defendant Charles in "both his individual and official capacities."  *Motion* [#17] at 6.

enforcement mechanism for protection of a federal right," *Golden State Transit Corp. v. City of Los Angeles*, 493 U.S. 103, 106 (1989), and that "numerous courts have held that the ADA's detailed remedial scheme forecloses a Plaintiff from maintaining a Section 1983 claim against individual Defendants for alleged violations of the Act." *Response* [#20] at 3 (citations omitted).  Defendants also argue that Plaintiff has failed to allege the requisite elements of a Section 1983 claim.  *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).  Defendants do not oppose Plaintiff's request to add a claim for violation of the Rehabilitation Act.  Plaintiff replies that, "while the ADA preempts § 1983 claims premised solely on violations of the ADA, the ADA does not preempt § 1983 claims premised on violations of the Equal Protection Clause of the United States Constitution." *Reply* [#21] at 2.  Plaintiff also asserts that the "[proposed] Amended Complaint pleads facts sufficient to state a claim for relief under § 1983 by showing that Defendants acted under color of law and denied Plaintiff equal protection of the laws." *Id.*

## II. ANALYSIS

As a preliminary matter, the pleading amendment deadline expired on March 4, 2013.  *See Scheduling Order* [#15] at 9.  The present Motion was filed on March 1, 2013, and was, therefore, timely.  The Court should grant leave to amend a complaint "freely . . . when justice so requires." Fed. R. Civ. P. 15(a)(2).  Leave to amend need not be given, however, "upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  Defendants argue that amendment should be denied because Plaintiff's proposed Section 1983 claim is preempted by his ADA claims and

otherwise inadequately pled.  Hence, according to Defendants, the Section 1983 claim is futile.  *Response* [#20] at 3, 5.

        In addition, the Court notes that Plaintiff's proposed Amended Complaint seeks to add claims after expiration of the statute of limitations, C.R.S. §13-18-102(g).  *Compare Compl.* [#1] *with Am. Compl.* [#17-1].  Thus, Plaintiff's claims would normally be time-barred unless they relate back to the original Complaint.  According to Federal Rule of Civil Procedure 15(c)(1)(B), an amendment "relates back" to the date of the original pleading if the "amendment asserts a claim . . . that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading."  At the same time, an amendment does not relate back "when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth."  *Mayle v. Felix*, 545 U.S. 644, 650 (2005).  The Court first addresses Defendants' futility argument before returning to the relation-back issue.

**A.    Futility**

        Defendants allege that Plaintiff's proposed  amendment of the Complaint  to add a Section 1983 claim is  futile.  *Response* [#20] at 2.  An amendment is futile only if it would not survive a motion to dismiss.  *See Bradley v. Val-Mejias*, 379 F.3d 892, 901 (10th Cir. 2004) (citing *Jefferson Cnty. Sch. Dist. v. Moody's Investor's Servs.*, 175 F.3d 848, 859 (10th Cir. 1999)).  "In ascertaining whether [P]laintiff's proposed [A]mended [C]omplaint is likely to survive a motion to dismiss, the [C]ourt must construe the [C]omplaint in the light most favorable to [P]laintiff, and the allegations in the [C]omplaint must be accepted as true."  *See Murray v. Sevier*, 156 F.R.D. 235, 238 (D. Kan. 1994).  Moreover, "[a]ny ambiguities must be resolved in favor of [P]laintiff, giving [him] 'the benefit of every

reasonable inference' drawn from the 'well-pleaded' facts and allegations in [his] [C]omplaint." *Id.*

### 1.    Preemption by ADA Claim

Plaintiff's proposed Amended Complaint seeks to bring a Section 1983 claim against Defendants. *Compare Compl.* [#4] *with Am. Compl.* [#17-1]. He purports to make the claim against Defendant Charles in both his individual and official capacities and against Defendant BFPD as a "local governing body." *Motion* [#17] at 6-7. It is well-settled that "Section 1983 itself does not create any substantive rights, but merely provides relief against those who, acting under color of law, violate federal rights created elsewhere." *Reynolds v. Sch. Dist. No. 1*, 69 F.3d 1523, 1536 (10th Cir. 1995) (citing *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). Further, Section 1983 cannot be used to vindicate a violation of federal law where Congress has otherwise created an incompatible and comprehensive enforcement scheme. *See Blessing v. Freestone*, 520 U.S. 329, 341 (1997).

Three Circuit Courts of Appeals have held that the ADA's detailed remedial scheme bars plaintiffs from maintaining a Section 1983 action against individual defendants for alleged violations of the ADA. *See Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002) (holding that a plaintiff cannot bring a Section 1983 suit to vindicate rights created under Title II of the ADA); *Alsbrook v. City of Maumelle*, 184 F.3d 999, 1011 (8th Cir. 1999) (same); *Holbrook v. City of Alpharetta*, 112 F.3d 1522, 1531 (11th Cir. 1997) (holding that "a plaintiff may not maintain a Section 1983 action in lieu of—or in addition to—a Rehabilitation Act or ADA cause of action if the only alleged deprivation is of the employee's rights created by the Rehabilitation Act and the ADA"). Additionally, as recently

reiterated by the Supreme Court, "[t]he provision of an express, private means of redress in the statute itself is ordinarily an indication that Congress did not intend to leave open a more expansive remedy under § 1983." *City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113 (2005).

The parties agree that "the ADA preempts § 1983 claims premised solely on violations of the ADA." *Reply* [#21] at 2.  Therefore, the Court declines to make an express ruling on this uncontested issue without guidance from the Tenth Circuit Court of Appeals, and instead notes only that it would certainly be futile to allow Plaintiff leave to amend a preempted claim. *See Gee v. Pancho*, 627 F.3d 1178, 1195 (10th Cir. 2010).  Plaintiff argues, however, that the "ADA does not preempt § 1983 claims premised on violations of the Equal Protection Clause of the United States Constitution." *Id.*  Plaintiff alleges that when a Section "1983 claim has an independent legal basis, such as the Equal Protection Clause, [Section 1983 and ADA] claims may proceed [together] even if they are based on the same facts." *Heno v. Sprint/United Mgmt. Co.*, 208 F.3d 847, 861 (10th Cir. 2000) (applying the same argument to Section 1983 claims and Title VII claims).  By this reasoning, Plaintiff concedes that his amendment would be futile in the absence of an independent legal basis for the Section 1983 claim. *See id.*  Therefore, assuming without expressly holding that the ADA preempts only Section 1983 claims without an independent legal basis, the Court analyzes Plaintiff's proposed Amended Complaint for failure to state an independent Section 1983 claim against Defendants pursuant to the Equal Protection Clause of the Fourteenth Amendment. *See Bradley*, 379 F.3d at 901 (citation omitted).

## 2.     Equal Protection Violation Pursuant to 42 U.S.C. § 1983

In the proposed Amended Complaint, Plaintiff seeks money damages against

Defendants "for denial of his Constitutional right to equal protection under the law and denial of his federal rights pursuant to 42 U.S.C. § 1983." *Am. Compl.* [#17-1] at 14.   The Equal Protection Clause prohibits the government from treating similarly situated individuals differently. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).   In order to state a claim for denial of his Fourteenth Amendment equal protection rights, Plaintiff must allege that Defendants either denied him a fundamental right or treated him differently based on a suspect classification. *Brown v. Zavaras*, 63 F.3d 967, 971 (10th Cir. 1995). "Disability is not a 'suspect classification' for equal-protection purposes." *Whitington v. Moschetti*, 423 F. App'x 767, 770 (10th Cir. 2011); *see, e.g.*, *Copelin-Brown v. N.M. State Pers. Office*, 399 F.3d 1248, 1255 (10th Cir. 2005).   If Plaintiff is not a member of a protected class and does not assert a fundamental right, the Equal Protection Clause of the Constitution is violated only if the alleged discriminatory action lacks a rational basis. *Brown*, 63 F.3d at 971.[4]

---

[4] Competing standards for resolving whether an equal protection claim fails to state a claim complicate the analysis of a purported claim under the rational basis standard. *See Brown*, 63 F.3d at 971.   In *Wroblewski v. City of Washburn*, 965 F.2d 452 (7th Cir. 1992), the Seventh Circuit identified and considered this issue:

> The rational basis standard requires the government to win if any set of facts reasonably may be conceived to justify its classification[, while] the Rule 12(b)(6) standard requires the plaintiff to prevail if relief could be granted under any set of facts that could be proved consistent with the allegations . . . . The latter standard is procedural, and simply allows the plaintiff to progress beyond the pleadings and obtain discovery, while the rational basis standard is the substantive burden that the plaintiff will ultimately have to meet to prevail on an equal protection claim . . . . To survive a motion to dismiss for failure to state a claim, a plaintiff must allege facts sufficient to overcome the presumption of rationality that applies to government classifications.

*Id.* at 459-60 (citation omitted).   The Tenth Circuit has applied the Seventh Circuit's hybrid approach to reconcile these standards. *See Brown*, 63 F.3d at 971.   The Court therefore applies this basic framework of analysis, while subsequently considering the principle that it should grant leave to amend a complaint "freely . . . when justice so requires." Fed. R. Civ. P. 15(a)(2).

### a.   State Actors

Before addressing the substance of Plaintiff's allegations regarding Defendants' alleged conduct towards Plaintiff, the Court must determine whether Defendants were state actors for purposes of the Section 1983 analysis. Section 1983 "provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights." *Conn v. Gabbert*, 526 U.S. 286, 290 (1999).  "[T]he purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole*, 504 U.S. 158, 161 (1992).  "[T]he under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how . . . wrongful." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (internal quotation omitted).  Thus, "the only proper defendants in a Section 1983 claim are those who represent the state in some capacity, whether they act in accordance with their authority or misuse it." *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1447 (10th Cir. 1995) (citing *Nat'l Collegiate Athletic Ass'n v. Tarkanian*, 488 U.S. 179, 191 (1988)).

Additionally, a suit against state employees in their official capacities is considered to be a suit against the state itself.  *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).  The Eleventh Amendment protects states and their agents from suit in their official capacities.  *Steadfast Ins. Co. v. Agric. Ins. Co.*, 507 F.3d 1250, 1252 (10th Cir. 2007) ("Eleventh Amendment immunity's primary purpose is to accord states the respect owed them as joint sovereigns."); *Fent v. Okla. Water Res. Bd.*, 235 F.3d 553, 558-59 (10th Cir.

2000).[5]   Further, Section 1983 liability does not extend to "arms of the state," because "[n]either states not state officers sued in their official capacity are 'persons' subject to suit under section 1983." *Duncan v. Gunter*, 15 F.3d 989, 991 (10th Cir. 1994).[6]

Four tests are used to determine whether a private individual or entity may be found to be acting under color of state law and, therefore, may be liable pursuant to Section 1983. *See Gallagher*, 49 F.3d at 1447.   In short, these tests are the nexus test, the symbiotic-relationship test, the joint-activity test, and the public-functions test. *See id.* The nexus tests requires the Court to consider "whether there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself." *Id.* (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)).   The symbiotic-relationship test asks whether the state and the private party have "so far insinuated [themselves] into a position of interdependence" that a symbiotic relationship has formed. *Id.* (citing *Moose Lodge No. 107 v. Irvis*, 407 U.S.

_____

[5]   Plaintiff specifies in his Motion that he intends to assert the Section 1983 claim against Defendant Charles in both his individual and official capacities. *Motion* [#17] at 6.   It is well-established that Defendant Charles is immune from suit in his official capacity. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991) (citing *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)); *see also Duncan v. Gunter*, 15 F.3d 989, 991 (10th Cir. 1994) (holding that state officers sued in their official capacity are not "persons" subject to suit under 42 U.S.C. § 1983).   Hence, addition of an official capacity Section 1983 claim is futile.   The Court, therefore, proceeds to examine the futility of an individual-capacity claim only.

[6]   The issue of whether Defendant BFPD is an "arm of the state," and therefore immune to a Section 1983 claim for damages, has not been addressed by the parties. *Simon v. State Comp. Ins. Auth.*, 946 P.2d 1298, 1304-04 (Colo. 1997) (discussing the "diverse array of balancing tests" applied to determine when an agency is an arm of the state); *see, e.g.*, *Tarrant Reg'l. Water Dist. v. Sevenoaks*, 545 F.3d 906, 911 (10th Cir. 2008) ("The Eleventh Amendment has been interpreted to bar suits against states *and state agencies* for money damages in federal court.") (emphasis added).   However, solely for the purposes of this Motion, viewing the evidence in the light most favorable to Plaintiff, as it must, the Court concludes that Defendant BFPD is not an arm of the state.   The Court proceeds in the analysis that follows by determining whether Defendant BFPD is a state actor.

163, 175 (1972); quoting *Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 725 (1961)). The joint-activity test inquires whether the private party is "a willful participant in joint activity with the State or its agents." *Id.* (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970)).   The public-function test determines whether the private entity has exercised "powers traditionally reserved to the State." *Id.* (quoting *Jackson*, 419 U.S. at 352).   In short, pursuant to each test, a plaintiff must show that "the alleged deprivation of constitutional rights was 'caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible.'" *Id.* (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 935 (1982)).

Interpreting the allegations in the light most favorable to Plaintiff, Plaintiff has fairly alleged that Defendant BFPD is a state actor pursuant to Section 1983.   Plaintiff alleges that Defendant BFPD is "a special purpose district located within Larimer County, Colorado." *Am. Compl.* [#17-1] ¶ 3.   The General Assembly enacted the Special District Act ("SDA") with the intent that special districts would "promote the health, safety, prosperity, security, and general welfare" of their inhabitants and of the state of Colorado. C.R.S. § 32-1-102(1).   The SDA defines "Special District" as "any quasi-municipal corporation and political subdivision organized or acting pursuant to the provisions of this article." C.R.S. § 32-1-103(20).   Special districts are recognized in Colorado as political subdivisions of the state that possess various proprietary powers. *Romer v. Fountain Sanitation Dist.*, 898 P.2d 37, 41 (Colo. 1995); *People ex rel. Lakewood v. Haase*, 596 P.2d 392, 394 (Colo. 1979).   The public-function test can determine whether the private entity has exercised "powers traditionally reserved to the State." *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982) (quoting *Jackson*, 419 U.S. at 352).   "It is difficult to conceive of a service

associated more closely with the state than the provision of fire protection services." *Goldstein v. Chestnut Ridge Volunteer Fire Co.*, 218 F.3d 337, 348 (4th Cir. 2000) (holding that a Maryland volunteer fire department formed as a non-profit corporation was a state actor for Section 1983 purposes). Thus, the Court finds that Plaintiff has sufficiently alleged that Defendant BFPD is a state actor for the purpose of amending his Complaint.

"Section 1983 provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights." *Howards v. McLaughlin*, 634 F.3d 1131, 1139 (10th Cir. 2011). Private conduct constitutes state action, however, if it is "fairly attributable to the State." *Lugar*, 457 U.S. at 937; *see also Scott v. Hern*, 216 F.3d 897, 906 (10th Cir. 2000). Because Plaintiff has adequately pled that Defendant BFPD is a state actor, he has also adequately pled that Defendant Charles, as an employee of Defendant BFPD who allegedly took action against Plaintiff in the course of his employment, is a state actor. *See Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1292 n.1 (11th Cir. 2007).

### b.    Adequacy of Substantive Allegations Against Defendant Charles

The Equal Protection Clause of the Fourteenth Amendment prohibits any state from denying "any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The Clause "creates no substantive rights[, but] embodies a general rule that States must treat like cases alike but may treat unlike cases accordingly." *Vacco v. Quill*, 521 U.S. 793, 799 (1997).

The Supreme Court has recognized "successful equal protection claims brought by a 'class of one.'" *Vill. of Willowbrook v. Olech ("Olech")*, 528 U.S. 562, 564 (2000). Plaintiff here alleges a class-of-one equal protection claim. *Motion* [#17] at 12; *see Jicarilla Apache*

*Nation v. Rio Arriba Cnty.*, 440 F.3d 1202, 1209 (10th Cir. 2006).  To ultimately succeed, an equal protection claim in such a "class-of-one" case requires a showing that "(1) [the party] has been intentionally treated differently than other similarly situated individuals, *see* [*Olech*, 528 U.S. at 564], and (2) the difference in treatment was objectively irrational and abusive, *see* [*Jicarilla*, 440 F.3d at 1211]."  *Rocky Mountain Rogues, Inc. v. Alpine*, 375 F. App'x 887, 895-96 (10th Cir. 2010).[7]

As indicated above, Plaintiff does not allege that he is part of an identifiable group or suspect class, but instead alleges that he is a "class-of-one" who has been intentionally treated differently from others similarly situated, and that there is no rational basis for the difference in treatment.  *Olech*, 528 U.S. at 564.  Plaintiff alleges that Defendant Charles "denied or placed unprecedented and unreasonable conditions on Plaintiff's requests for light duty, [when] Plaintiff was the only qualified firefighter denied light duty within the ten years prior to" his injury.  *Am. Compl.* [#17-1] ¶¶ 46-47.  Plaintiff also alleges that Defendant Charles refused "to provide Plaintiff with light duty, [allow] access to the leave bank or . . . allow Plaintiff's vacation and sick leave time to be maximized."  *Id.* ¶ 82.  Therefore, Plaintiff has adequately pled differential treatment by Defendant Charles.

---

[7] Some courts have suggested that in order to succeed on a class-of-one equal protection claim, a plaintiff must prove that he was "singled out" due to animus and treated differently from those similarly situated, and that these actions "were a spiteful effort to 'get' [Plaintiff] for reasons wholly unrelated to any legitimate state activity."  *Mimics, Inc. v. Vill. of Angel Fire*, 394 F.3d 836, 849 (10th Cir. 2005) (citation and internal quotation marks omitted). However, the Tenth Circuit has not explicitly adopted the "ill will and animus" standard.  *See Jicarilla*, 440 F.3d 1202, 1210 (10th Cir. 2006) (declining to decide whether ill will is required for such a claim, but noting that the circuits are split on the issue and acknowledging the language from *Mimics* regarding animosity); *Franklin v. City of Merriam*, 06-2421-CM, 2008 WL 1884189 (D. Kan. Apr. 25, 2008) ("the Tenth Circuit has not overtly adopted a malice or ill will requirement, and has 'struggled with the question whether class-of-one claims require an allegation of subjective ill will.'").  Although animus is thus not a deciding factor in the Court's findings here, the Court cites to allegations of animus where the allegations support a finding of "irrational and abusive" treatment.  *See Jicarilla*, 440 F.3d at 1211.

-14-

Plaintiff's proposed Amended Complaint also alleges that Defendant Charles's conduct was willful and wanton, *id.* ¶ 83-83, and that his actions were "motivated by a desire to harm Plaintiff," *id.* ¶ 86.  For the purpose of ruling on Plaintiff's Motion for leave to amend, the Court finds that these allegations of irrational and abusive disparate treatment are adequately pled.  *Compare Wroblewski*, 965 F.2d at 460 (affirming dismissal, but noting that an allegation that the city acted out of personal animosity towards the plaintiff creates a closer question), *with McMillan v. Wiley*, 813 F. Supp. 2d 1238, 1253 (D. Colo. 2011) ("The Court should grant leave to amend a complaint 'freely . . . when justice so requires.'") (citing Fed. R. Civ. P. 15(a)(2)).

"Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation."  *Schneider v. City of Grand Junction Police Dep't*, ___ F.3d ___, Nos. 12-1086, 12-1115, 2013 WL 2421071, at *5 (10th Cir. June 5, 2013) (quoting *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997)).  A defendant is personally involved in an alleged constitutional violation only if there is an "affirmative link" between his conduct and the alleged violation.  *Stidham v. Peace Officer Stds. & Training*, 265 F.3d 1144, 1156 (10th Cir. 2001).  For the purposes of the Motion, the Court finds that Plaintiff has sufficiently pled individual involvement by Defendant Charles.  *See Am. Compl.* [#17-1] ¶¶ 39 (Plaintiff requested that Defendant Charles grant him light or modified duty), 46 (placed conditions on Plaintiff's requests for light duty), 48 (denied Plaintiff's request to use leave bank), 56, 76-77 (terminated Plaintiff).  Therefore, interpreting the allegations in the light most favorable to Plaintiff, Plaintiff has adequately pled the elements of a Section 1983 class-of-one equal protection claim against Defendant Charles in his individual capacity.

### c.   Adequacy of Substantive Allegations Against Defendant BFPD

Municipalities and political subdivisions are considered "persons" within the meaning of Section 1983. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 689 n.64 (1978). However, "a municipality may not be held liable under § 1983 simply because it employs a tortfeasor." *Bd. of Cnty. Comm'rs v. Brown ("Brown")*, 520 U.S. 397, 403 (1997). The municipality may only be liable if it had an "official municipal policy of some nature" that was the "direct cause" or "moving force" behind the alleged constitutional violations. *Monell*, 436 U.S. at 691; *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-85 (1986); *City of Okla. City v. Tuttle*, 471 U.S. 808, 820 (1985). Supreme Court cases have indicated that the plaintiff must show that "the policy was enacted or maintained with deliberate indifference to an almost inevitable constitutional injury." *Schneider*, 2013 WL 2421071, at *7 (citing *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 410 (1997); *City of Canton v. Harris*, 489 U.S. 389 (1989)). Although the Supreme Court's interpretation of Section 1983 in *Monell* originally applied only to municipal governments and not to private entities acting under color of state law, the Tenth Circuit Court of Appeals has extended the doctrine to private Section 1983 defendants. *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1216 (10th Cir. 2003). The Tenth Circuit also noted in *Schneider*, 2013 WL 2421071, at *5, 7, that, although *Iqbal* articulated a stricter standard for personal involvement to establish supervisory liability, nothing in *Iqbal* changed the interpretation of Section 1983 standards for imposing municipal liability.

Plaintiff again alleges that he is a "class-of-one" who has been intentionally treated differently by Defendant BFPD from others who are similarly situated, and that there is no rational basis for the difference in treatment. *Olech*, 528 U.S. at 564. Plaintiff claims that he was treated differently from other "qualified firefighters" when Defendant BFPD, through Defendant Charles, "denied or placed unprecedented and unreasonable conditions on

-16-

Plaintiff's requests for light duty, [and] Plaintiff was the only qualified firefighter denied light duty within the ten years prior to" his injury. *Am. Compl.* [#17-1] ¶¶ 46-47. Plaintiff also alleges that "Andrew Kuiken and other firefighters with lost-time injuries" were permitted to use "accumulated vacation and sick leave in eight rather than 24 hour increments," whereas Plaintiff's request to do the same was denied. *Id.* ¶ 50. Thus, Plaintiff has adequately pled the first element of a class-of-one claim because he has alleged intentional differential treatment by Defendant BFPD. *Am. Compl.* [#17-1] ¶¶ 46-47, 50.

In order to survive dismissal, Plaintiff must also allege facts indicating that the state actor had no legitimate motive for the disparate treatment. *Olech*, 528 U.S. at 564. The Seventh Circuit observed in *Wroblewski*, 965 F.2d at 459, that while the rational basis standard applicable to class-of-one claims requires the government to win if any reasonable set of facts may conceivably justify its action, the Rule 12(b)(6) standard for dismissal requires the plaintiff to prevail "if relief could be granted under any set of facts that could be proved consistent with the allegations." The Rule 12(b)(6) standard is appropriately applied to a futility argument on a motion for leave to amend. Hence, the Court determines whether Plaintiff has adequately alleged facts which, if assumed to be true, would state a claim pursuant to the Equal Protection Clause. *See id.* at 459-60 (citation omitted); *Brown*, 63 F.3d at 971; Fed. R. Civ. P. 15(a)(2).

Plaintiff alleges that he was treated differently from other "qualified firefighters" when Defendant BFPD, through Defendant Charles, "denied or placed unprecedented and unreasonable conditions on Plaintiff's requests for light duty, [when] Plaintiff was the only qualified firefighter denied light duty within the ten years prior to" his injury. *Am. Compl.* [#17-1] ¶¶ 46-47. Based on the limited information available at this stage of the litigation,

this alleged double-standard regarding light-duty does not appear to be related to "administrative ease" or economic motivations. *See Davoll v. Webb*, 194 F.3d 1116, 1146 (10th Cir.1999) (characterizing "administrative ease" as "a reason sufficient to withstand rationality review").  Plaintiff also alleges that "Andrew Kuiken and other firefighters with lost-time injuries" were permitted to use "accumulated vacation and sick leave in eight rather than 24 hour increments," whereas Plaintiff's request to do the same was denied. *Id.* ¶ 50.  On its face, this account of differing treatment seems contrary to "the legitimate government [interest in] maintaining workplace harmony and avoiding disruption," as "the resulting resentment and division among the two classes of employees [*i.e.*, those with flexible vacation and sick time and those without] could have a negative impact on working relationships." *Teigen v. Renfrow*,  511 F.3d 1072, 1085 (10th Cir. 2007) (citing *Indep. Charities of Am., Inc. v. Minnesota*, 82 F.3d 791, 797-98 (8th Cir. 1996)).  Based on these allegations, the Court finds that Defendant BFPD's conduct may have been "irrational and abusive and wholly unrelated to any legitimate state activity."  *Rocha v. Zavaras*, 443 F. App'x 316, 316 (10th Cir. 2011) (quoting *Olech*, 528 U.S. at 564).  Therefore, for the purpose of ruling on Plaintiff's Motion for leave to amend, the Court finds that these allegations of irrational disparate treatment are adequately pled.  *Am. Compl.* [#17-1] ¶¶ 46-47, 50; *compare Wroblewski*, 965 F.2d at 460, *with Jicarilla*, 440 F.3d at 1212  (noting that the Supreme Court considered *Olech* on a motion to dismiss, and thus accepted "nothing more than an allegation that the plaintiff was similarly situated to others").  Therefore, interpreting the allegations in the light most favorable to Plaintiff, Plaintiff has adequately pled the elements of a Section 1983 class-of-one equal protection claim against Defendant BFPD, meeting the "constitutional violation" prong of the municipal liability test.

*See Myers v. Okla. Cnty. Bd. of Cnty. Comm'rs*, 151 F.3d 1313, 1316 (10th Cir. 1998).

To impose liability on a municipality, Plaintiff must also identify a municipal "policy statement, ordinance, regulation, or *decision officially adopted and promulgated*," or a municipal custom or practice "so permanent and well settled as to constitute a 'custom or usage' with the force of law," that caused the plaintiff's injury. *Murrell v. Sch. Dist. No. 1*, 186 F.3d 1238, 1249-50 (10th Cir. 1999). Further, to warrant municipal liability, it is not enough to merely identify conduct properly attributable to the municipality; "[t]he plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." *Brown*, 520 U.S. at 404; *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1999). That is, "[P]laintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Brown*, 520 U.S. at 404; see *Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010); *Dodds v. Richardson*, 614 F.3d 1185, 1202 (10th Cir. 2010); *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1318 (10th Cir. 2002).

"Municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986). Specifically, when a municipal official who is "responsible for establishing final policy with respect to the subject matter in question" makes "a deliberate choice to follow a course of action . . . from among various alternatives," municipal liability will attach to that decision. *Id.* at 483-84; *see also Starrett v. Wadley*, 876 F.2d 808, 818 (10th Cir. 1989) ("[I]f a county official has been delegated the power to make final policy in an area of the county's business, then the official's acts in that area are the acts of the county.").

Plaintiff makes repeated allegations in the proposed Amended Complaint that Defendant BFPD, through Defendant Charles, made final decisions regarding his employment and termination. *Am. Compl.* [#17-1] ¶¶ 27 (unanimously approved Plaintiff's use of excess vacation time), 40 (refused to file Plaintiff's WC claim), 46 (imposed limitations on Plaintiff's request for light duty), 48 (same), 49 (same), 51 (same), 54 (refused to allow Plaintiff access to the leave bank), 57 ("ratified" Plaintiff's termination). Taken as a whole, these allegations reflect "decision[s] officially adopted or promulgated" which allegedly caused Plaintiff harm. *Murrell*, 186 F.3d at 1249. Considering these allegations in the light most favorable to Plaintiff, the Court cannot find that Plaintiff would be unable to succeed on a claim for municipal liability. Therefore, Plaintiff's proposed Amended Complaint is not futile to the extent that it alleges a Section 1983 equal protection claim for damages against Defendant BFPD.

It is not clear from the allegations asserted in the proposed Amended Complaint that Plaintiff's amendment would be futile. *See Foman*, 371 U.S. at 182 ("If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits."). At this stage, the Court's role is to determine whether Plaintiff has provided a plausible basis for liability, accepting his version of the facts and potential evidence as true. *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). Accordingly, the Court finds that the amendment to add a Section 1983 equal protection claim against Defendant BFPD and Defendant Charles in his individual capacity is not impermissible on the basis of futility.

**B.    Relation Back**

Plaintiff's proposed Amended Complaint seeks to add claims after expiration of the

statute of limitations.  *Compare Compl.* [#1] *with Am. Compl.* [#17-1].  Colorado's statute

of limitations, C.R.S. §13-18-102(g), provides a two year period in which to file "[a]ll actions

upon liability created by a federal statute where no period of limitation is provided in said

federal statute."  Plaintiff alleges that his termination occurred on October 27, 2010; hence,

his Section 1983 claim expired on October 27, 2012.  *See Am. Compl.* [#17-1] ¶¶ 56-57.

The proposed amendment would, therefore, be time-barred unless it relates back to the

original Complaint. Federal Rule of Civil Procedure 15(c)(1)(B) provides that an amendment

"relates back" to the date of the original pleading if the "amendment asserts a claim . . . that

arose out of the conduct, transaction, or occurrence set out . . . in the original pleading."

However, an amendment does not relate back "when it asserts a new ground for relief

supported by facts that differ in both time and type from those the original pleading set

forth."  *Mayle*, 545 U.S. at 650.

Colorado courts recognize the relation back doctrine, *see* C.R.C.P. Rule 15(c), *see*

*also Denver & R. G. W. R. Co. v. Clint*, 235 F.2d 445, 447 (10th Cir. 1956).  The Court finds

that the Motion meets the requirements of Fed. R. Civ. P. 15(c)(1).  Plaintiff's original

Complaint was filed in state court on October 26, 2012.  *See State Ct. Verified Compl.* [#1-

1] at 1.  In the proposed Amended Complaint, Plaintiff makes no attempt to add previously

unnamed defendants, and the common 'core of operative facts' uniting the original and

newly asserted claims support the finding that the claims sought satisfy the requirements

of Fed. R. Civ. P. 15(c)(1).  *See Benton v. Bd. of Cnty. Comm'rs*, No. 06-cv-01406-PSF-

MEH, 2007 WL 4105175, at *4 (D. Colo. Nov. 14, 2007).  The Court also notes that

Defendants make no arguments and cite no law to the contrary.  Accordingly, the proposed

Amended Complaint relates back and is thus permissible.

## III.  CONCLUSION

Based on the above, therefore, the Court recommends that Plaintiff be permitted leave to file his proposed Amended Complaint.  Accordingly,

The Court respectfully **RECOMMENDS** that the Motion [#17] be **GRANTED in part and DENIED in part**.  Plaintiff may add a claim for violation of the Rehabilitation Act and a Section 1983 equal protection claim against Defendant BFPD and against Defendant Charles in his individual capacity only.

IT IS FURTHER **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.  A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).  A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review. *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated:  July 15, 2013

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge